IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNATHAN WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 8090 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| WISCONSIN LOCK & LOAD PRISONER TRANSPORTS, LLC and TIMOTHY J. MCCAUGHEY, driver for Wisconsin Lock & Load Prisoner Transports, LLC. | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Johnathan Williams, an inmate at the Lake County Jail, has filed a three-count second amended complaint against defendants Timothy J. McCaughey and his employer, Wisconsin Lock & Load Prisoner Transports, LLC ("Lock and Load"), seeking recovery for injuries he sustained in a vehicle accident that he claims were caused by McCaughey's actions. Count I alleges cruel and unusual punishment in violation of 42 U.S.C. § 1983 against McCaughey. Count II alleges negligent conduct in violation of Illinois law against both defendants, and Count III alleges willful and wanton conduct in violation of Illinois law against both defendants. Defendants filed a third party complaint against Angel G. Melendez, the other party involved in the accident. Defendants have filed a joint motion to dismiss, seeking dismissal of Counts I and III for failure to state a claim. For the following reasons the motion is denied.

# BACKGROUND[1]

On December 22, 2014, plaintiff and another inmate were transported from Hennepin County Jail in Minneapolis, Minnesota to Lake County Jail in Waukegan, Illinois. Plaintiff was transported in a Wisconsin Lock & Load Prisoner Transports, LLC van driven by McCaughey. Plaintiff alleges that McCaughey put a metal chain around his waist, secured his handcuffs to the waist chain, placed him in the van in the seat directly behind the driver's seat, and secured his waist seatbelt. According to plaintiff, McCaughey did not place the shoulder strap across plaintiff's body. Plaintiff asked McCaughey why the shoulder strap was not being strapped across his shoulders, but McCaughey declined to use the strap. The complaint is unclear as to whether McCaughey properly secured the other inmate from Hennepin County Jail.

According to plaintiff, it is a five or six-hour drive from Hennepin County to Lake County. During the trip, McCaughey often drove erratically in excess of 80 miles per hour, frequently looked down at his phone, and placed several calls without using a hands-free device. The van stopped near the Illinois/Wisconsin border before reaching Lake County Jail, and picked up a third inmate. Plaintiff alleges that the third inmate was shackled in the same fashion as plaintiff, but was secured with a waist and shoulder seatbelt.

Throughout the trip there was fog and rain, and the weather became increasingly inclement causing the roadways to be slick from rain mixing with snow at near-freezing temperatures. Plaintiff claims that McCaughey drove too fast for the weather conditions, and looked down at his phone as the van approached a traffic light. The traffic light changed to red, and when McCaughey looked up he slammed on his breaks to avoid a crash with the car in front

---

[1] The following facts are taken from Plaintiff's Second Amended Complaint and are assumed to be true for purposes of this Motion to Dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

of the van. Plaintiff's upper body was thrust forward and his neck snapped back. Plaintiff alleges this happened because he was not wearing a shoulder strap, and was unable to brace himself due to being handcuffed. The van was then struck from behind by another car, and plaintiff again thrust forward, snapping his neck and back backward.

Following the accident, plaintiff was placed in a neck brace, secured on a stretcher, and taken by ambulance to Vista Medical Center East. Plaintiff was treated for severe neck and back pain, and claims that the crash caused severe pain in the left side of his back where a bullet from an earlier incident is lodged. Plaintiff was later released back to police custody and taken to Lake County Jail, where he was placed on bed rest for twenty-two days before being moved to a normal cell. Plaintiff complains that since the accident, he has been on pain medication including Gabapentin for nerve pain, the muscle relaxant Flexeril, and Naproxen, an anti-inflammatory. Practitioners at Lake County Jail told plaintiff that the bullet in his back tore through tissue and moved into his flesh since the accident. Finally, plaintiff alleges that he has been prescribed psychiatric medication to address emotional pain and trauma from the accident, and continues to have back and neck pain, muscle spasms, sleep disturbances, and frequent nightmares.

## **LEGAL STANDARD**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. McMillan v. Collection Professionals Inc., 455 F.3d 754, 758 (7th Cir. 2006). The complaint must plead sufficient facts to plausibly suggest

that plaintiff has a right to relief and raise that possibility above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## DISCUSSION

### I. Section 1983 Claim – Count I

In Count I, plaintiff alleges that McCaughey violated the "Cruel and Unusual" and "Due Process" clauses of the Eighth and Fourteenth Amendments of the United States Constitution when he deliberately refused to secure plaintiff's shoulder strap. The claim is brought pursuant to 42 U.S.C. § 1983. Plaintiff claims that McCaughey knew of a substantial risk of serious harm to plaintiff because McCaughey ignored plaintiff's inquiry about securing his upper body in a shoulder strap. Plaintiff asserts that McCaughey's knowledge of a substantial risk of harm is evidenced by McCaughey securing the upper body of another prisoner, and McCaughey's use of a cell phone while driving in inclement weather.

To state a valid claim for relief pursuant to § 1983, plaintiff must establish that he was deprived of a constitutional right or a right secured by federal law, and that the alleged deprivation was committed under color of state law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999); Padula v. Leimbach, 656 F.3d 595, 600 (7th Cir. 2011). The Eighth Amendment, as applied to the various states through the Fourteenth Amendment, requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). An Eighth Amendment violation requires proof that the defendant acted with deliberate indifference to the plaintiff's needs (the subjective component), and that the alleged deprivations were sufficiently severe to rise to the level of a constitutional violation (the objective component). Wilson v. Seiter, 501 U.S. 294, 298–302 (1991); Brown v.

Budz, 398 F.3d 904, 909 (7th Cir. 2005). Mere negligence is insufficient. Farmer, 511 U.S. at 835.

Demonstrating deliberate indifference toward an inmate's safety requires a showing that the inmate was held under conditions posing a substantial risk of serious harm, and that an individual official had subjective knowledge of the risk, which he personally disregarded. Id. Proving that an officer was deliberately indifferent to the safety of an inmate requires "more than a showing of negligence or even grossly negligent behavior." The officer must act "with the equivalent of criminal recklessness." Fisher v. Lovejoy, 414 F.3d 659, 662 (7th Cir. 2005).

McCaughey argues that even if he was acting under color of law, "claims based on driving too fast for the road conditions are grounded in negligence, not criminal recklessness" or deliberate indifference. Banks v. Dart, 2014 WL 625865, at *4 (N.D. Ill. Feb. 18, 2014) (citing Hill v. Shobe, 93 F.3d 418, 421 (7th Cir. 1996)). McCaughey also argues that because a claim for failing to secure a seatbelt at all does not rise to the level of a constitutional violation or show deliberate indifference, a claim based on failing to sufficiently secure a seatbelt cannot rise to that level. According to McCaughey, plaintiff's allegations amount to no more than negligence.

In response, plaintiff argues that the allegations of the complaint go beyond a mere accident because he has alleged that he was in defendant's custody, and that the failure to properly seatbelt plaintiff was coupled with an allegation of reckless and irresponsible driving. Plaintiff asserts that McCaughey's alleged behavior plausibly suggests that he knew of a substantial risk, but chose to disregard it.

The test is not whether there is a constitutional right to a seatbelt or safe driving, but whether the facts alleged plausibly support that McCaughey demonstrated deliberate indifference to a substantial risk of harm to plaintiff. Wilson, 501 U.S. at 298. This standard requires that the

defendant have actual knowledge of a substantial risk of harm to the plaintiff's safety, and that the defendant fail to take appropriate steps to protect the plaintiff from the specific danger. Klebanowski v. Sheahan, 540 F.3d 633, 639 (7th Cir. 2008).

In general, failure to secure a seatbelt, although unwise, is not a substantial risk of harm that rises to the level of a constitutional violation. Taylor v. Stateville Dept. of Corr., 2010 WL 5014185, at *1 (N.D. Ill. Dec. 1, 2010). The defendant must act purposefully or recklessly in addition to failing to secure the seatbelt. Goods v. Navarro, 2012 WL 1021807, at *3 n.1 (N.D. Ill. Mar. 26, 2012). Courts have found that a constitutional violation may occur when the allegations include reckless driving in addition to failure to secure a seatbelt. Taylor, 2010 WL 5014185 at *2; Brown v. Fortner, 518 F.3d 552, 559 (8th Cir. 2008); Rogers v. Boatright, 709 F.3d 403, 409 (5th Cir. 2013).

In Rogers, a prisoner alleged that he was injured while being transported in a prison van. Id. at 406. The van lacked seatbelts, the prisoner was shackled, and he was seriously injured when the van stopped abruptly. The Rogers court found that the plaintiff's allegations, "operat[ing] the prison van recklessly knowing that there was a substantial risk that Rogers would be injured if the van stopped abruptly because Rogers was shackled in leg irons and handcuffs and was not provided with a seatbelt," were sufficient at the pleading stage. Id. at 409.

Plaintiff has alleged that McCaughey refused to properly secure his seatbelt, drove too fast for the weather conditions, improperly used his cell phone while driving[2], and slammed on the van's breaks to avoid a collision caused by his inattention. Plaintiff's allegations plausibly suggest that McCaughey's refusal to secure the seatbelt amounts to deliberate indifference. Brown, 518 F.3d at 560 (holding that a reasonable jury could find that there was deliberate

---

[2] The court notes that Illinois law prohibits the use of a hand held cell phone or electronic device while driving. 625 ILCS 5/12-610.2(b).

6

indifference to a substantial risk of harm when the defendant rejected the plaintiff's request for a seatbelt and drove recklessly). The remaining allegations of reckless driving are sufficient to show a substantial risk of harm. Id. Therefore, plaintiff has stated a claim for violation of a constitutional right. McCaughey's motion to dismiss Count I is denied.

## II. Willful and Wanton Conduct Claim – Count III

In Count III, based on state law, plaintiff alleges that defendants had a duty to exercise due care in transporting inmates, they breached that duty, and that their breach showed an actual or deliberate intention to cause harm. Alternatively, plaintiff claims that defendants were willful and wanton by acting utterly indifferent to or consciously disregarding plaintiff's welfare. Plaintiff alleges that McCaughey breached his duty by the combination of failing to properly use safety restraints, driving too fast for conditions, improper use of a cell phone while driving, and failing to maintain a safe distance from a leading car all during inclement weather. Plaintiff alleges that these actions constitute willful and wanton conduct, which proximately caused his injuries.

Willful and wanton conduct is "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1–210. A person engages in willful or wanton conduct when he or she "ignores known or plainly observable dangerous conditions and does something that will naturally and probably result in injury to another." Carter v. Chicago Police Officers, 165 F.3d 1071,1080–81 (7th Cir. 1998). In Illinois, a wilful and wanton conduct claim must allege elements of a recognized tort because a willful and wanton conduct claim cannot stand alone. Krywin v. Chicago Transit Authority, 238 Ill.2d 215, 235 (Ill. 2010). Willful and wanton conduct is a "hybrid between acts considered negligent and

7

those found to be intentionally tortious." Krivitskie v. Cramlett, 301 Ill.App.3d 705, 707 (Ill. App. Ct. 1998).

To properly plead willful and wanton conduct, plaintiffs must essentially plead the elements of a negligence count, as well as an allegation of either intentional or reckless willful and wanton conduct. Kirwan v. Lincolnshire–Riverwoods Fire Protections Dist., 349 Ill.App.3d 150, 155 (Ill. 2004). Intentional willful and wanton conduct occurs when one undertakes an action with actual or deliberate intent to harm, while reckless willful and wanton conduct requires "an utter indifference to or conscious disregard for the welfare of the plaintiff." Id. A rational trier of fact may infer "utter indifference" or "conscious disregard" from the nature of the defendant's conduct. See Doe v. Calumet City, 161 Ill.2d 374, 391 (Ill. 1994); see also American Nat. Bank & Trust Co. v. City of Chicago, 192 Ill.2d 274, 285 (Ill. 2000) (inferring reckless disregard where there was "a failure, after knowledge of impending danger, to exercise ordinary care to prevent it" or "a failure to discover [a] danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.") (internal citations omitted).

Defendants argue that plaintiff's claim in Count III should be dismissed for the same reasons McCaughey argues that Count I should be dismissed. Defendants argue that plaintiff's claim is no more than a claim for negligence. The Seventh Circuit has found that the standard for willful and wanton conduct is "remarkably similar" to the standard for deliberate indifference. Chapman v. Keltner, 241 F.3d 842, 847 (7th Cir. 2001) (affirming summary judgment for willful and wanton conduct claim based on the similar standard used to affirm summary judgment for deliberate indifference claim).

8

Plaintiff has properly pled the elements of a negligence claim, and also alleges that defendants' conduct was either deliberate or in conscious disregard for plaintiff's welfare. Plaintiff has alleged sufficient facts to support a willful and wanton conduct claim because his allegations include all the elements of negligence and an allegation that defendants acted with the requisite culpable mindset. Because plaintiff has alleged facts to plausibly show deliberate indifference, plaintiff also alleged sufficient facts to support a claim for willful and wanton conduct. Id. Therefore, defendants' motion to dismiss Count III is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Counts I and III (doc. 39) is denied. Defendants are directed to answer those counts on or before August 24, 2016. The parties are directed to file a joint status report using this court's form on or before August 31, 2016. The status hearing previously set for August 28, 2016, is continued to September 13, 2016, at 9:00 a.m.

**ENTER:       August 3, 2016**

**Robert W. Gettleman**
**United States District Judge**